THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ZIO'S RESTAURANT COMPANY, LLC, *et al.*[1] | § | Case No. 16-52041-RBK |
| | § | |
| Debtors. | § | (Joint Administration Pending) |

**DEBTORS' EMERGENCY MOTION TO (I) RETAIN AND PAY AUCTIONEER, (II) SELL CERTAIN PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND (III) APPROVE STORE CLOSURE PROCEDURES**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Zio's Restaurant Company, LLC, *et al.* (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases" or "Cases"), hereby file this Emergency Motion Pursuant to 11 U.S.C. §§ 327, 328, and 363, Federal Rule of Bankruptcy Procedure 6003, and Local Rule of Bankruptcy Procedure 9014(e), for authority to (i) retain and pay an auctioneer, (ii) sell certain property of the Debtors' estates by auction, free and clear of all liens, claims, and encumbrances, and (iii) implement store closing procedures. In support of this Motion, the Debtors would say:

**BASES FOR EMERGENCY CONSIDERATION**

The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Zio's Restaurant Company, LLC (7289); FMPRG # 601, LLC (3202); FMPRG # 602, LLC (3428); FMPRG # 603, LLC (3630); FMPRG # 604, LLC (2466); FMPRG # 605, LLC (2388); FMPRG # 606, LLC (4855); FMPRG # 607, LLC (0005); FMPRG # 608, LLC (0094); FMPRG # 609, LLC (0826); FMPRG # 610, LLC (0443); FMPRG # 611, LLC (0581); FMPRG # 613, LLC (8493); FMPRG # 615, LLC (3714); FMPRG # 618, LLC (8999); FMPRG # 623, LLC (9441); and FMPRG #624, LLC (9436). The address for all of the Debtors is 120 Chula Vista Drive, Hollywood Park, Texas 78232.

{39302962;2}

transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Specifically, if the Debtors are unable to sell the furniture, fixtures and equipment described herein on an expedited basis, rent could continue to accrue at the related premises, and any benefit to the estates from sales of the FF&E could be substantially diminished, if not completely negated, by the accruing rent. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## I. JURISDICTION

1. The United States Bankruptcy Court for the Western District of Texas (the "Court" or "Bankruptcy Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

3. On September 7, 2016, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as a debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtors have operated a full-service chain restaurant since 2007. As of the Petition Date, there were fifteen (15) stores, all of which operate in leased premises, located in

six (6) states (Texas, Oklahoma, Missouri, Kansas, New Mexico and Colorado) with approximately 875 employees.

5. The Zios' concept was founded in 1994 out of Oklahoma City, Oklahoma. In 2007 the current ownership group acquired the Zios' concept from Mazzio's Corp (the "Acquisition"). At that time there were fifteen restaurants. The Zios' concept was expanded to at one time having twenty-one (21) locations in six states.

6. Zios focuses on providing Italian cuisine in a casual and comfortable open-aire piazza. Zios offers appetizers, soups and salads, pastas, specialties, calzones and sandwiches, pizzas, drinks, wine, desserts, kid's menu, pronto lunches, and gluten free menu options.

7. Zio's Restaurant Company, LLC, a Texas limited liability company, is the sole member of each of FMPRG # 601, LLC, an Oklahoma limited liability company, FMPRG # 602, LLC, an Oklahoma limited liability company, FMPRG # 603, LLC, an Oklahoma limited liability company, FMPRG # 604, LLC, a Missouri limited liability company, FMPRG # 605, LLC, a Missouri limited liability company, FMPRG # 606, LLC, a Colorado limited liability company, FMPRG # 607, LLC, a Texas limited liability company, FMPRG # 608, LLC, a Texas limited liability company, FMPRG # 609, LLC, a Kansas limited liability company, FMPRG # 610, LLC, a Texas limited liability company, FMPRG # 611, LLC, a Texas limited liability company, FMPRG # 613, LLC, a New Mexico limited liability company, FMPRG # 615, LLC, an Oklahoma limited liability company, FMPRG # 618, LLC, a Texas limited liability company, FMPRG # 623, LLC, a Texas limited liability company, and FMPRG # 624, LLC, a Texas limited liability company.

8. The Debtors' business operations are, and have been, managed by FMP SA Management Group, LLC ("FMP") pursuant to a management agreement. FMP, a privately held

company based in Hollywood Park, Texas, is a multi-concept developer and operator of independent restaurant chains. FMP provides operational oversight and all professional and administrative services for the Debtors. In return for the services provided, FMP receives reimbursement of allocated costs and expenses and a management fee. A separate entity, FMP Restaurant Payroll, LLC, provides employment and wage related services for the Debtors.

9. As of the Petition Date, the Debtors estimate that is has approximately $2.3 million of unsecured trade debt and other outstanding operating expenses, including, but not limited to rent, general operating payables and past-due taxes. There are no secured creditors.

10. Much of the unsecured debt consists of amounts owed to current vendors. In terms of numbers, only a handful of priority and general unsecured operating debts have not been kept current and were not current at the time of filing.

11. In the aggregate, for Debtors' 2015 fiscal year, the Debtors paid approximately $3.2 million in taxes and fees to various taxing, licensing, regulatory, and other governmental authorities. As of the Petition Date, the Debtors owe approximately $245,000 in outstanding taxes and fees.

12. A series of factors have contributed to the Debtors' operational challenges and ultimately resulted in the need to file these chapter 11 cases. In sum, following the initial expansion to 21 locations, the Debtors' were unable to continue to grow the Zios' concept and revenues due to general economic factors beyond their control.

13. Perhaps more than any other factor, the Debtors' operations and financial performance have been adversely impacted by the overall weakness in the casual dining environment. The casual dining industry is highly competitive and faces increased competition from fast-casual dining options. Despite the relatively steady economy in most of the United

States, the casual dining environment remains depressed. Casual dining throughout the United States is one market area currently suffering financially.

14. With the Debtors' locations being centered around the area of the United States impacted the most by changes in oil prices the Debtors' revenues have further declined. The prices of crude oil and natural gas have declined dramatically since mid-year 2014, having recently reached multiyear lows. Based on these market conditions, the average consumer of casual dining has been negatively impacted on the use of their discretionary expenses, including eating at casual dining restaurants.

15. The Debtors also struggle with rental rates that are currently or in the near future at an amount that the revenues from the specific leased locations cannot sustain.

16. The Debtors have been impacted by increased costs of goods, services and employees and have worked on streamlining those costs.

17. In response to these developments, the Debtors have, among other things, significantly reduced spending and implemented a series of cost-cutting measures.

18. Specifically, these costs reductions included, among other things, closing of certain locations, streamlining costs for good and services, and negotiating with landlords.

19. Despite the best efforts of the Debtors and their management to actively reduce their operational and financial costs, the significant and prolonged downturn in market conditions in the oil and gas sector and the competitive and declining casual chain market and rental market have caused the Debtors' revenues to decrease and the need for filing for bankruptcy.

20. Additional details regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of this Chapter 11 Case are set forth in the First Day

Declaration filed contemporaneously herewith and incorporated herein by reference as though set forth in full.

**RELIEF REQUESTED**

**Background**

21. Through this Motion, the Debtors respectfully request authority to (i) retain and pay Auction Nation, LLC (the "Auctioneer") as auctioneer for the Debtors' estates pursuant to the Auction Agreement attached hereto as **Exhibit A** (the "Auction Agreement"), pursuant to 11 U.S.C. § 327, and (ii) sell by auction all furniture, fixtures, and equipment (the "FF&E") at any locations to be closed by the Debtors, free and clear of all liens, claims, and encumbrances, pursuant to 11 U.S.C. § 363.

22. On the Petition Date, the Debtors filed motions to reject and close five (5) restaurants currently being operated by the Debtors:

> Store No. 605, Independence MO
> Store No. 607, Humble, TX
> Store No. 608, Webster, TX
> Store No. 613, Albuquerque, NM
> Store No. 623, San Antonio, TX

(the "Rejected Locations"). The Debtors intend to close those five (5) locations and are evaluating the remaining eleven (11) operating locations for closure as well (collectively, the "Restaurants").

23. Valuable FF&E is located at the Rejected Locations (the "FF&E Sale Locations") and the currently operating locations. Upon closure of any Restaurant, the Debtors intend to sell the FF&E for the benefit of the estates.

**Employment and Payment of the Auctioneer**

24. The Debtors propose to retain and pay the Auctioneer pursuant to the terms of the Auction Agreement, and to have the Auctioneer sell the FF&E by auction.

25. Section 1107 of the Bankruptcy Code grants a debtor-in-possession the majority of the rights of a trustee appointed under Chapter 11. Included within those rights is the right to employ professional persons. Section 327 of the Bankruptcy Code provides, in relevant part:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

*See* 11 U.S.C. § 327(a). Furthermore, Section 328 of the Bankruptcy Code authorizes the Debtor to retain a professional on an other than hourly basis.

26. Employment of the Auctioneer is necessary to assist the Debtors in liquidating the FF&E for the benefit of these estates. If the FF&E is not sold and remains at the closed locations, rent may continue to accrue and the FF&E will depreciate in value. The Debtors believe the Auctioneer is duly-qualified to, and will, facilitate an expeditious, profitable sale of the FF&E for the benefit of their estates.

27. The Auctioneer does not hold or represent an interest adverse to these estates, and is disinterested as that term is defined by 11 U.S.C. § 101(14). An Affidavit of Disinterestedness of the Auctioneer is attached hereto and incorporated herein as **Exhibit B.**

28. Accordingly, the Debtors respectfully request authority to (i) employ the Auctioneer pursuant to the terms of the Auction Agreement, and (ii) compensate the Auctioneer in accordance with the terms of the Auction Agreement, subject to the provisions of 11 U.S.C. § 327 & 328 and appropriate Court approval.

**Sale of FF&E Free and Clear of All Liens, Claims, and Encumbrances**

29. The Debtors intend to sell the FF&E by auction, free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f).

30. Section 363 of the Bankruptcy Code provides in relevant part that a trustee (or debtor-in-possession) may sell property of the estate free and clear of the interest of any entity if

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f).

31. The lienholders whose valid claims are secured by valid liens on the FF&E will have their liens transferred to the proceeds of such sales in the order and priority as they existed on the Petition Date.

32. Accordingly, the Debtors believe relief under 11 U.S.C. § 363(f) is appropriate, and request authority to sell the FF&E by auction, free and clear of all liens, claims, and encumbrances.

**Approval of Store Closure Procedures**

33. As set forth above, the Debtors seek to close the Rejected Locations and continue to evaluate whether to assume or reject the remaining unexpired leases (the "Remaining Leases"). Accordingly, the Debtors respectfully request the Court approve the following procedures:

  a. Upon 72 hour notice to any affected landlord of the Debtors' decision to reject a lease, the Debtors may cease operations at the related location and liquidate any FF&E at the location in accordance with the procedures set forth herein. The

    Debtors will contemporaneously move to reject the applicable lease, however, rejection of the lease will not be approved absent further order of this Court;

 b. The Debtors will file notice of their intent to close with the Court and serve notice on the affected landlord and master service list; and

 c. If any party in interest informs the Debtors that it opposes closing of any particular store location, then the Debtors will operate the store pending a hearing on either the store closure or rejection of that lease;

(collectively, the "Store Closure Procedures").

### Ancillary Relief Requested

34. The Debtors further request that (i) any restrictions under the applicable leases on the sale and procedures proposed herein be deemed waived; (ii) any order granting this Motion not impact or prejudice the affected landlords' rights to file claims, of any nature, in those Chapter 11 Cases; and (iii) any order granting this Motion not impact or prejudice the bankruptcy estates' rights and remedies related to those landlords' claims.

### THE REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

The Debtors submit the facts cited herein illustrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates. Based on the foregoing, Bankruptcy Rule 6003 has been satisfied.

### WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

Notice of this Motion has been provided via overnight means to: (i) the U.S. Trustee; (ii) the Debtors' consolidate thirty (30) largest unsecured creditors; and (iii) the Debtors' landlords (collectively, the "Notice Parties"). The Debtors submit that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request the Court enter an Order in substantially the form attached hereto as **Exhibit C**, (i) authorizing the Debtors to employ the Auctioneer pursuant to the terms of the Auction Agreement; (ii) authorizing the Debtors to sell the FF&E free and clear of all liens, claims, and encumbrances; (iii) approving the Store Closure Procedures; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: September 7, 2016          Respectfully submitted,

AKERMAN LLP

 /s/ David W. Parham
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
2001 Ross Avenue, Suite 2550
Dallas, TX  75201
Telephone:  (214) 720-4300
Facsimile:   (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com

PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION