IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ZIO'S RESTAURANT COMPANY, LLC, *et al*[1] | § | Case No. 16-52041-rbk |
| | § | |
| | § | (Joint Administration Pending) |
| Debtors. | | |

**EMERGENCY MOTION FOR INTERIM AND FINAL
AUTHORITY FOR THE DEBTORS TO USE CASH
COLLATERAL, OBTAIN DEBTOR IN POSSESSION FINANCING, AND
DETERMINING ADEQUATE PROTECTION, SUPERPRIORITY CLAIMS AND LIENS**

Zio's Restaurant Company, LLC, *et al.* (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned Chapter 11 cases (the "Chapter 11 Cases" or "Cases"), by and through undersigned counsel, hereby files this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), granting interim and final authority to use cash collateral, obtain debtor in possession financing, and determining adequate protection, superpriority claims and liens (the "Motion"), and show as follows:

## I. PRELIMINARY STATEMENT

1. The Debtors operate sixteen restaurants in six states. A more complete description of the Debtors' operations and history is set forth in the *Declaration of Peter Donbavand in Support of First Day Motions*, filed contemporaneously with this Motion. To continue their operations in an orderly manner on a post-petition basis, the Debtors need immediate authority to borrow funds pursuant to a loan agreement negotiated with Alamo CRG,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Zio's Restaurant Company, LLC (7289); FMPRG # 601, LLC (3202); FMPRG # 602, LLC (3428); FMPRG # 603, LLC (3630); FMPRG # 604, LLC (2466); FMPRG # 605, LLC (2388); FMPRG # 606, LLC (4855); FMPRG # 607, LLC (0005); FMPRG # 608, LLC (0094); FMPRG # 609, LLC (0826); FMPRG # 610, LLC (0443); FMPRG # 611, LLC (0581); FMPRG # 613, LLC (8493); FMPRG # 615, LLC (3714); FMPRG # 618, LLC (8999); FMPRG # 623, LLC (9441); and FMPRG # 624, LLC (9436).

{39332893;2}

LLC (the "DIP Lender"). The Debtors intend to borrow enough funds to operate in the ordinary course of business during the bankruptcy cases.

2. To obtain the requested credit, the Debtors proposes to execute the *Note and Security Agreement* (the "DIP Note") in substantially the same form as the DIP Note attached hereto as **Exhibit B**. Under the DIP Note, the Debtors would agree (and hereby propose) to becomes Makers under the following terms:

(a) Loan in the original principle amount of $500,000;

(b) Loan shall accrue interest at 10% per annum as further described in the Note;

(c) Loan matures 180 days from the initial advance, unless called early;

(d) Loan carries a 15% default rate of interest:

(e) There shall be an origination fee ($10,000.00);

(f) Reasonable legal fees not to exceed $10,000.00 shall be reimbursed to the Lender; and

(g) Loan shall be secured by a blanket lien on all assets of the Debtors and shall be entitled to super-priority status.

## II. JURISDICTION AND VENUE

3. The Debtors commenced the cases by filing petitions for relief on September 7, 2016. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(D)and (M). Venue is proper in the San Antonio Division of the Western District of Texas as the Debtors are headquartered at 120 Chula Vista Drive, San Antonio, Texas 78232.

## III. RELIEF REQUESTED

4. By filing this Motion, the Debtors respectfully request authorization to enter into post-petition financing agreements, substantially in the form of the agreement attached as **Exhibit B**, with the DIP Lender on the terms summarized below:

(a) Advances for Operations – The DIP Lender will agree to advance $500,000 on an interim basis.

(b) Budgeted Use of Funds – The Debtors will use such funds pursuant to the budget attached as **Exhibit C** (the "Budget"). The attached Budget identifies the Debtors' proposed expenses to be incurred and paid during the bankruptcy Cases, including payroll, landlords, inventory purchases, and bankruptcy professionals. Debtors must comply with all line-items in the Budget, within a variance and 10% on an aggregate basis.

(c) Collateral – The DIP Note defines "Collateral" to be all of the Debtors' assets, including without limitation all accounts, chattel paper, commercial tort claims, deposit accounts and securities accounts, documents, equipment, fixtures, general intangibles, goods, intellectual property, instruments, inventory, investment property, leases, all letters of credit, letter of credit rights, and other supporting obligations, all money, cash and cash equivalents, tax refunds and tax credits, all products and proceeds of any of the foregoing, including all insurance proceeds payable for the loss, damage or destruction of any of the foregoing provided, however, that "Collateral" shall exclude any avoidance and recovery actions under Chapter 5 of the Bankruptcy Code.

(d) Priming Liens – The DIP Lender's liens will be senior to any other party in interest.

(e) Interest – Interest will accrue at a rate of 7% per annum and, upon default, 10% per annum, and will be paid (pursuant to the Budget) on the first day of each month.

(f) DIP Lender's Fee – A fee of $10,000.00 shall be due at origination. In addition, legal fees for up to $10,000.00 in connection with the loan shall likewise be due.

(g) Superpriority Claim for Advances – The DIP Lender will receive a superpriority claim for the advances made under the DIP Note, which will be paid on the effective date of a plan.

(h) Maturity Date – The Debtors' obligations under the DIP Note will be payable on demand of the DIP Lender, or upon the Maturity Date, which will be 180 days after the Petition Date, unless extended in writing by the DIP Lender.

(i) Events of Default - The list of events of default are set forth in Section 7 of the DIP Note, but include failure to make payments to the DIP Lender as required under the DIP Note, dismissal or conversion of the Cases, appointment of a trustee, allowance of a surcharge against the DIP Lender.

5.  The Debtors further seek permission from this Court to use cash collateral, as set forth in the Budget, to fund ongoing operations.

6.  By separate motion filed contemporaneously with this Motion, the Debtors are seeking authority to continue using their existing cash management system.

7.  Based on discussion to date, the Debtors believe that the DIP Lender is willing to fund pursuant to the DIP Note.

## IV. ARGUMENTS AND AUTHORITY

*Cash Collateral and Adequate Protection*

8.  Section 363(c) of the Bankruptcy Code provides that a debtor-in-possession may use cash collateral if all interested entities consent or the court, after notice and a hearing, authorizes such use. Section 363(e) of the Bankruptcy Code requires that the use of cash collateral be prohibited or conditioned as is necessary to provide adequate protection to persons that have an interest in cash collateral. *In re DeSardi*, 340 B.R. 790, 797 (Bankr. S.D. Tex. 2006) ("Adequate protection is . . . grounded in the belief that secured creditors should not be deprived of the benefit of their bargain"). Read together, sections 363(c) and (e) of the Bankruptcy Code authorize a debtor-in-possession to use the cash collateral of a secured creditor if such creditor's collateral is adequately protected. *See In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass. 1985) (finding that the court may authorize the use of cash collateral upon a showing that those with an interest in the cash collateral are adequately protected).

9.  Although the term "adequate protection" is not precisely defined in the Bankruptcy Code, section 361 sets forth three non-exclusive examples of what may constitute adequate protection: (1) periodic cash payments equivalent to the decrease in value of the creditor's interest in the property; (2) an additional or replacement lien on other unencumbered

{39332893;2}    4

property of the debtor; or (3) other relief that provides the indubitable equivalent of the creditor's property interest. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1388 (5th Cir. 1986). "[T]he debtor-in-possession has the burden of proof on the issue of adequate protection." *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003).

10. Bankruptcy Rule 4001(b) permits a court to approve use of cash collateral during the 15-day period following the filing of a motion only to the "extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Here, the Debtors require immediate access to the cash collateral to, among other things, fund any interim obligations while DIP financing is forthcoming.

11. Accordingly, the Debtors request that the Court authorize the Debtors to immediately use the cash collateral in the amounts set forth in the Budget, pending a final hearing. At the final hearing, the Debtors request that the relief requested herein be granted on a permanent basis.

*DIP Financing, Liens and Superpriority Claims*

12. The DIP Lenders are willing to provide bridge financing to the Debtors to enable the Debtors to operate during these bankruptcy Cases, but only on the terms described in this Motion and more fully in the DIP Note. Based on management's efforts, they have concluded that the DIP Note is the only means of obtaining the amount of capital necessary to operate the Debtors' business while the Debtors seek confirmation and consummation of the plan.

13. Section 364(c)&(d) authorizes the Debtors to incur debt post-petition as requested herein. If a debtor-in-possession is unable to obtain unsecured credit allowable as an administrative expense, and the Debtors demonstrate that the to-be-subordinated creditors are

adequately protected, the Bankruptcy Code authorizes such debtor-in-possession to incur debt secured by priming liens. *See* 11 U.S.C. § 364(d)(1). Under the circumstances, the Debtors have concluded that DIP Lender is the only party willing to finance the Debtors' operations in the amounts necessary to complete their reorganization. On these facts, the relief requested is warranted.

## V. NOTICE

14. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel for the DIP Lender; (c) the Debtors' thirty (30) largest unsecured creditors, on a consolidated basis; (d) those persons who have formally appeared and requested notice in this case pursuant to Bankruptcy Rule 2002; and (e) the Internal Revenue Service and other governmental entities required to receive notice under the Bankruptcy Rules or the Local Rules. The Debtors submit that no other or further notice need be provided.

## VI. PRAYER

WHEREFORE, the Debtors respectfully request that this Court enter an Order in substantially the same form as the order attached hereto as **Exhibit A**: (i) authorizing the Debtors to execute the DIP Note and borrow and use funds from the DIP Lender on the terms set forth herein; (ii) granting to the DIP Lender liens and superpriority claims set forth herein; (iii) granting such relief on an interim basis, and after a final hearing, on a permanent basis; and (iv) granting such other and further relief as is just and proper.

Dated: September 7, 2016

Respectfully submitted,

AKERMAN LLP

/s/ David W. Parham
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
2001 Ross Avenue, Suite 2550
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com

PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION